*Suicide Watch No Access to Forms or Mail *
(had to ~~arrange~~ find Paper Pen and envelope for this complaint)

RECEIVED
4/3/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States District Court
Northern District of Illinois
Western Division

PC SCAN          23CV50110

Firas M. Ayoubi )
    Plaintiff. )          Cause:
    -vs- )
Tarry Williams; )
Angela Carlson, )
Director of Ill. )          Judge: JUDGE REINHARD
Dep't of Corrections. )          MAGISTRATE JUDGE JENSEN
)
)

Combined Civil Rights Complaint
And Emergency Motion For Temporary
Restraining Order And Preliminary Injunction

Now comes Firas Ayoubi (hereinafter the "Plaintiff")
Currently under duress of Suicide watch with no access
to forms incoming mail or otherwise, and relying on
inmates to help obtain ~~assistance~~ Pen, Paper and an envelope, hereby complains
against the Defendants, as follows.

                    I
        Statement Regarding Compliance
            To Local Rules & FRCP.

Plaintiff is under duress. He is Not allowed to possess
Paper, Pen, envelopes or mail or Federal forms. He
had to find ways to smuggle Pen, paper, an envelope
and 1 form in order to file this complaint. In light
of the filing of a TRO/Preliminary injunction Motion
and likelihood of irreperable harm he asks the Honorable
court to forgive his Non-compliance by not using forms.
(he sent envelope to law library for e-filing.)

## II
## Statement of The Parties

Plaintiff, Firas Ayoubi No: R-66956, currently in Custody at Dixon C.C. 2600 N. Brinton Ave. Dixon, Il 61021

Defendant: Tarry williams, warden, Dixon C.C.
Employed at Ill Dep't of Corrections
2600 N. Brinton Ave. Dixon, IL, 61021

Defendant: Angela Carlson, correctional Counselor Dixon C.C.
Employed at Ill. Dep't of corrections
2600 N. Brinton Ave. Dixon, IL, 61021

Defendant: Director of IDOC.
Employed at State of Illinois, IDOC.
1301 Concordia Court, Springfield, Il, 62794

## III
## Prior Lawsuits And Litigation History

Plaintiff has had significant litigation History, An exec. committee restrictive filer order, and Subject to Three strikes Provision. He cannot recall all the cases, or any case #'s (only a few). He seeks leave to Proceed informa Pauperis under the imminent danger exception to The PLRA. The following list of cases is only what he can recall, off memory and should not be considered a complete list.

1. Ayoubi et al v. Dart 13-C-0549, N.D.Ill. Judge Durgle. (Freedom of religion case) Dismissed

2. Ayoubi v. Dart 13-C-8301 N.D. Ill. Judge Kendall, (Conditions of confinement) Dismissed

3. Ayoubi v. Dart 14-C-1701 N.D Ill Judge Durgle (Conditions of confinement) Dismissed

4. Ayoubi v. Dart 14-C-1703 or (4) N.D.Ill Judge Durgle. (Access to Courts Claim.) Dismissed received Strike

5. Ayoubi v City of DesPlaines - 13-C-8556 Judge Chong (unlawful Sizeure) Dismissed

6. Ayoubi v Dart 13-C-8343 Judge Durgle (conditions of confinement) Dismissed

III Prior Lawsuits continued.

7. Ayoubi v. Smith 14 c 3331 Judge Castillo
(excessive force, Seach and Siezure) Dismissed (N.D.Ill)

8. Ayoubi v Pryzyblo et al 14 C 51 or 50 Judge Pallmyer.
(excessive force, Unlawful Search, Probable cause) Pending
(N.D.Ill)

9 Ayoubi v. Basillone 14 c ____ (unknown) Judge St.Eve
(employment Discrimination)(N.D.Ill) Dismissed.

10. Ayoubi v. Garbis (unknown case #) unknown Judge
(N.D.Ill) Dismissed (received Strike) (legal malpractice)

11. Ayoubi v. United States 20 c ____ Judge kendall.
N.D.Ill (Rico, fraud, Privacy violations) Dismissed received strike

12. Ayoubi v. Dart 14 C 50 Judge Norgle N.D.Ill
(excessive force) Dismissed received Strike

13. Ayoubi v. Altez No: 14 C - 4306 Judge Norgle
N.D.Ill (Deliberate indifference) Dismissed

14. Ayoubi v. Honesbrands No Unk. Judge Unk.
S.D.Ill. (consumer fraud) Dismissed

15. Ayoubi v wexford 18 c 1689 Judge McGlyn
S.D Ill. (deliberate indifference) Dismissed on Summary Judgment
Pending on anticipated appeal.

16. Ayoubi v. U.S. Bank et al. No. Judge Durkin N.D. Ill. (Fraud, Privacy) Pending on appeal @ 7th Cir.

17. Ayoubi v. Presence Health No Unk Judge unk Cook county circuit court (wrongful death) unk disposition.

18. Ayoubi v. Garbis No unk. Judge Lawler Cook county circuit court (legal malpractice) Dismissed

19. Ayoubi v. Hanesbrands et al. No. 19 L 2[1] Judge Lee Circuit court of Lee county (IL Cons. Fraud act) Pending

20. Ayoubi v. Wexford et al. No. 2012 Judge Lee Circuit court of Lee county (Fraud) Pending.

## Exhaustion of Remedies

Plaintiff exhausted all available remedies for the retalliation claim, and has an anticipation to file subsequent emergency grievance for other claims But the remedy is not available because officers refuse to give plaintiff any grievances on crisis watch. Thus, through fault of the prison, Plaintiff cannot obtain a grievance to file. He asks the Honorable court to grant leave to proceed under the circumstances and in the event he exhausts in the near future to allow him to reinstate.

## IV
## Statement Of Facts

1. Firas Ayoubi, the plaintiff is incarcerated at Dixon c.c. serving the custodial portion of his sentence.

2. The plaintiff was issued a preliminary Diagnosis for a Neurological-Neuro Psychiatric condition known as a Functional Movement Disorder. Which are Neurological and Psychogenic in nature. Which a Person suffers severe twisting and jerking of extremeties, arms, shoulders, trunk etc. According to Mayoclinic.org and UptoDate - trusted Medical Sites. Functional Movement Disorders are treated with regular "cognitive behavior therapy", a regular course of "Neuro psych" testing, and various Medications can help with movements.

3. There is No cure for Functional Movement Disorders, But the Symptoms and severe pain can be treated Symptomatically.

4. UPTODate .org identifies FMD as very painful from excessive movements, can cause Serious anxiety, Depression and PTSD, and can cause Serious Disability in the Patient in conducting Various life activities.

5. Plaintiff's attending Physician and neurologist at UIC, yasaman Kinirad noted to plaintiff that she requires he go and get Neuropsych testing at a specialty clinic at UIC to get definitive diagnosis and treatment to Suppress movements and Pain. After The evaluation with neuropsyche, the neurologist said She will also Provide treatment in conjunction with the neuropsych treatment. She also stated for a person with FMD, it is ideal to also get weekly cognitive behavioral therapy through the Neuropsych clinic only.

6. Dixon c.c.'s Medical Director, Dr. Sy and wexford Health Sources recently approved plaintiff for Neuropsych and neurology appointments at UIC

7. the Neurologist, and trusted Medical Literature from the National Institutes of Health, Mayoclinic, and UPTODATE Suggest that lack of treatment delays, or denials can lead to disability in performing life functions, excessive Pain, PTSD, depression, anxiety, exacerbation of condition, Manifestation of further Neurological disorders, and Suicidal ideations.

8. Plaintiff was placed on Suicide watch on 3/27/23 until 3/31/23, for Symptoms relating to his FMD.

9. Psychologist Hoffmann told plaintiff that in the meantime he should take Lexapro, an antidepresant and antianxiety medication to Suppress the Symptoms of depression, PTSD, and anxiety caused by his FMD. She discussed it at length with his

attending Psychiatrist, Dr. Maitra who indicated Plaintiff suffers from a rare Neurological disorder and requires on-going treatment do. The Doctor approved the administration of Lexapro.

10. Approximately 1 year ago, Plaintiff was assaulted while he was on a dayroom Phone. The incident lasted a matter of seconds, where an individual in Custody, Mr. Ronald Nigh thought Plaintiff was "lunging" at him (because of involuntary abnormal movements) and grabbed on plaintiffs Neck. Plaintiff did not touch Mr. Nigh. Mr. Nigh immediately appanlogized to Plaintiff and Plaintiff accepted his appanlogy.

11. Mr. Nigh was ultimately given a disciplinary ticket and sent to restrictive housing for assault. Plaintiff, being the victim, was not disciplined

12. After plaintiff reported the assault, a "keep seperate from" or "ksf" was put in place.

13. ksf's in IDOC can be implimented in a variety of ways, either placement of the two individuals in seperate housing units where they wont have contact, or to institute a facility transfer of one of the individuals.

14. Mr. Nigh has approximately 10 months remaining on his sentence. He has a Myriad of disciplinary tickets in his history, enough for the average inmate to be subject to disciplinary transfer. Mr. Nigh indicated he was requesting to be transferred to be closer to home, Near taylorville/springfield area.

15. In this year, Mr. Nigh and Plaintiff developed a good friendship and are No threat to one another.

16. During this time, a grievance was pending which was filed after the incident. The grievance was requesting Single cell accomodation because of Plaintiffs experiences with cellmates because he would elbow them in the small cells due soley from his Neurological condition. The incident with Mr. Nigh was briefly Mentioned merely to substantiate the need for single cell. Because nigh thought Plaintiff lunged at him. So it corroborated the likelihood that he would elbow Cellmates.

17. The person who responded to the grievance was angela carlson, A counselor, who was formerly the Placement/Assignment Officer at Dixon (who chooses who gets jobs and where).

18. Carlson leaped to the conclusion to transfer plaintiff without investigating the matter with internal affairs (the people who placed the KSF) or interviewing Nigh and Plaintiff to give them opportunity to request to recind the KSF. A Standard Practice at IDOC.

19. Internal affairs head, LT. Manzano expressed that they were aware No risk existed, especially after a year and it was of low concern to I/A.

20. After repeated attempts to ask Carlson to Provide Nigh and myself with the Proper forms to Sign and rectify the KSF, and her failure to act, Plaintiff resorted to writing letters to the head of Clinical Services Mr. Block, and internal affairs Lieutenant Manzano.

21. Eventually Plaintiff got lucky, and saw a different counselor, Mr. Reyes, who, within 24 hours presented myself and Mr. Nigh with the Paperwork. We both Signed the paperwork indicating we are no threat to eachother. Internal affairs interviewed Nigh and asked him if he would ever harm Plaintiff, he answered no.

22. For Some reason, unknown to Plaintiff it was submitted to the transfer Coordinators office, and they denied to remove it.

23. Mr. Block told plaintiff that the KSF between Plaintiff and Nigh was Minimal, and there was "Many" People in custody at Dixon with KSF's and there were "No plans" to Move either of us

24. The entire time, Ms. Carlson alleged "I cant even Submit you anyway because you have Medical holds".

25. This Statement was made to plaintiff after Carlson, on her own Submitted Plaintiff, not Nigh, for a transfer to a prison Significantly Further away from plaintiffs family, his attending Physicians at UIC, and a Prison with a higher aggression Level and considerably less access to dayrooms, Movement, and considerably Smaller cells. In Sum, a disciplinary transfer.

26. Ms. Carlson provided False information to Plaintiff That she "couldn't even submit" him for a transfer due to medical holds Knowing the whole time she actually did.

27. She intended on Plaintiff to rely on her false Statement in order to blindside him and prevent him from having time to grieve the situation or appeal it.

28. Likewise, Ms. Carlson provided False information when Submitting Plaintiff, by omitting that he has on-going treatment and referrals to UIC from Springfield on official documents through the wires.

29. She intended for Springfield (and plaintiff eventually) to rely on that omission in order to get him transferred.

30. Plaintiff previously filed complaints against Ms. Carlson for discriminatory hiring practices when she was the assignment officer. He also filed grievances for retalliation and breach of privileged information through the IDOC grievance process and letters to the Governor and Inspector Generals office when, after receiving information about a letter Plaintiff wrote to the governors office, from the Director of IDOC, distributing the contents of the privileged letter and details about Plaintiffs conviction history in his master file to other inmates.

31. Ultimately she was removed from that post and assigned as a counselor.

32. Ms. Carlson's actions now constitute retalliation.

33. IDOC's attempts to transfer the Plaintiff will substantially interfere with his on-going referrals to Neuro-Psych, neurology, and regular cognitive behavioral therapy, it will cause unnecessary delay, and cancelation of appointments and will lead to additional pain, and suffering.

34. IDOC had the option of transfering Mr. Nigh, who has no medical issues which relate to ongoing treatment or evaluations at outside hospitals.

35. Dixon C.c. is a combined Mental health and Medical facility with substantially better staffing and resources to meet plaintiffs Medical and Mental health needs far more than any other facility. Placement in another facility will increase denial, delay or cancelations of ongoing referrals and treatment.

36. Plaintiff has also, PTSD and depression from the condition. He receives on-going therapy from on-site psychologists and psychiatrists who he is mentally comfortable in treating him and whom are professionally familiar with his condition and in a better position to provide treatment.

37. Plantiff was initially transferred to Dixon from Pinckneyville in 2018 for access to better mental and medical healthcare to meet the needs of his condition.

38. Placement in a institution like Illinois river which has cells that are small with higher aggression levels will exacerbate complications relating to his medical /Mental health condition, a disability.

39. The condition affects his ability to accomplish almost every daily task, up to but not limited to eating, preparing food, dressing, exercising, sleeping, using the restroom, writing etc. Making all of those tasks take a lot longer to accomplish by having to move and twist involuntarily during them. This also aggitates cellmates

40. Not only is single housing warranted, but placement in a "X-house" style facility with significantly smaller cells than Dixon would cause complications to his health, safety and quality of life.

41. IDOC has certain criteria for approving/Denying transfers. Among them is "threat to host security", "critical Mental health Needs" and "critical Medical Needs" and "Proximity to inmates Needs".

42. Clearly if, in this situation there was a Person who was a "threat to Inst. security". It wouldn't be the victim in this case.

43. Plaintiff Meets every other Mentioned criteria to NOT get transferred. he has critical Mental and medical Needs, and Dixon is in close Proximity to his Medical and Mental health Needs. Including being among virtually the only facility close enough to see his Mother who is turning 77 and Sick.

## Count I

### Violations of The Civil Rights Act 42 U.S.C. §1983 Against Angela Carlson

44. Plaintiff incorporates by reference para. 1-43 as though fully set forth in this count 1.

### A: Violation Of The First Amendment Free Speach And Retalliation

45. The Defendant retalliated against the Plaintiff for execising his right to file greivances and complants to the Governor of Illinois and Office of the inspector general.

46. She knowingly, and vindictively put in Plantiff for a transfer to a horsier and Cortier facility under the guise of adhering to a lesf transfer policy.

47. She was aware she had the option of submitting Ronald Nigh even if he had 10 months remaining because IDOC routinely transfers inmates even with 30 days or a few months left on their sentences.

48. She was also aware Nigh had No medical holds, was Not attending programs or working.

49. Instead she lied to plaintiff after he started making inquiries and told him either way she couldn't even submit him because he had medical holds.

50. Even while knowing the whole time she already submitted him, and falsely and fraudulently omitted his medical /mental health issues from the official transfer request documents in order to blindside him from knowing about the transfer.

51. Facilitating this transfer will cause irreparable harm on plaintiff and its facilitation will be a product of fraud.

Count II
Violations of The Rehabilitation Act &
Violations of The ADA
Against All Defendants.

52. Plaintiff incorporates by reference paragraphs 1-53 as though fully set forth in this count II.

53. Plaintiff's preliminarily diagnosed FMD (Functional movement disorder, PTSD, Depression and anxiety, substantially limits his life activities including but not limited to Mobility in small cells, elbowing cellmates, brushing his teeth, cleaning showering, sleeping, putting on clothes, using the restroom. concentrating, having occasional psychological breakdowns, on some occasions being hospitalized /housed in suicide units.

54. His FMD Symptoms include twisting, jerking and convulsing of extremeties including Shoulder, arms, and trunk and head. The movements cause severe pain, disability, and extreme psychological distress.

55. A record of This condition exits in Plaintiffs mental health and medical records.

56. Defendants attempts to transfer him to Illinois River would substantially limit his life activities in the following respects,

57. Illinois river has higher aggression rate. Causing liklihood of Plaintiff being assaulted higher.

58. The cells are smaller, causing liklihood of hitting cellmates from involuntary movements higher. Putting him in danger.

59. Geographically; removal from dixon c.c. (a mental health and medical facility, will cause Plaintiff to interruption in therapy on site with psychologists (mindfullness classes/therapy) and his attending psychiatrist. It will also cause cancelation, delay, and disruption in current referred examinations and treatment in UIC with Neurology and Neuropsych.

60. As the Neurologist instructed, treatment with Neuropsych at UIC along with regular, weekly CBT treatment only at UIC will be severely impacted. Because at Dixon, East Moline (a minimum that Plaintiff doesnt qualify for), Pontiac and Stateville (maximums that Plaintiff doesnt qualify for), Sheridan (a drug treatment center that Plaintiff doesnt

qualify for.) are the only facilities that are accepted at UIC. Further, it will severely impact the recommended treatment by the Neurologist. IDOC will not send Plaintiff weekly or even Bi-monthly to UIC for CBT and other treatment. If he is not at the Northern facilities mentioned.

61. Single cell is warranted regardless of what facility, But Dixons cells are larger and More Suitable for plaintiffs condition.

62. Furthermore, the transfer attempts are a product of retaliation, or otherwise unreasonable, and could be easily mitigated by Merely transferring Ronald Nigh instead of the harmful alternative of Moving Plaintiff.

63. Dixon has a large, complex System of Medical and mental health Professionals, that exceed other prisons, They are able to treat plaintiff in contrast to other prisons. Further, it is in range geographically of Plaintiffs medical needs at UIC. Dixon and IDOC regularly Provide Single cells, and as a standard practice Deny transfer requests by facilities when the transfer would impact familial relationships, Mental or Medical treatment. A Service, or activity of IDOC involving KSF's is typically, moving the other individual to avoid complications or in another individuals treatment.

64. Therefore in light of IDOC's disregard for Plaintiffs Mental and medical issues, and their choice to not transfer Nigh instead, constitutes Discrimination against plaintiff because of his disability.

65. regardless, the denial of medical and mental health care from the anticipated transfer, knowing this is the only facility that can accomodate plaintiffs condition amounts, in itself, to an exclusion from medical and mental health services,

66. Plaintiff is subjected to Disparate treatment, in other instances, the aggressors are transferred. Not the victim.

67. The IDOC and facility failed to make reasonable accomodation to Stay at Dixon and provide single housing. Alleging, as the Healthcare administrator suggested, the manifestation of harm first by requiring plaintiff to show a disciplinary report on himself. And requiring him to get beat up first.

68. Moving Plaintiff to another institution will not only cause irreperable harm to him, but unnecessary expense on the State.

Count III
Temporary Restraining order And
Motion For Preliminary Injunction

69. Plaintiff incorporates by reference Para 1-68 as though fully set forth in this Count III

70. Plaintiff Suffers from an objectively serious medical condition and mental health condition.

71. Allowing IDOC to transfer plaintiff under the aforementioned circumstances will 100% lead to cancelation delay and denial of critical medical and mental health treatment at UIC with neurology delays or denials of cognitive behavioral therapy and exacerbate his condition cause unnecessary pain or commitment for PTSD/Depression

72. IDOC's policy is unreasonable because it allows for a punitive transfer of a victim of assault merely for reporting a crime, or a whistleblower for exposing corruption.

73. Even if if they claim its not their policy to do that. Having a lack of clarity in existing policy will cause irreperable harm.

74. Plaintiff will most certainly suffer irreperable harm, pain anxiety, exacerbation of condition, and familial hardship's

75. IDOC has the full capability of Transfering Nsgh. or, reviewing and reconsideration on deletion of the KSF. Something Plaintiff and Nsgh requested an entire year after the incident.

Count IV.
Common Law Fraud

76. Plaintiff incorporates by reference para. 1-75 as though fully set forth in this count 4.

77. Ms. Carlson perpetuated fraud by telling plaintiff a false statement that "I cant even submit you for transfer because you have medical holds". While knowing all the while that she already submitted him and omitted his medical holds from official transfer request documents.

78. Ms. Carlson intended for Plaintiff to rely on the false statement in order to blindside him, and prevent him from stopping the transfer or grieving the issue.

79. Plaintiff was damaged by Carlsons Fraud by being subjected to attempt transfer without due process. And unecessary emotional Distress on him and his family.

80. She also comitted fraud by supplying false information to Springfields Transfer coordinators office. In order to get plaintiff transferred, she lied on official Documents, through the wires relating to the status of his medical or mental health condition_

81. She intended on Plaintiff and Springfield to rely on the Omission to attempt to legitimize the perception of the transfer.

## Count V
## Willful Negligence Against Carlson

82. Pl. incorporates by reference para 1-81 as though Fully set forth in this count V.

83. Ms. Carlson owed Plaintiff a duty of care by being a counselor, to supply true and accurate information to Plaintiff or others, like IDOC, concerning Plaintiff. She owed a duty of care to advocate for Plaintiff, for the best interest of his positive adjustment at the facility.

84. She intentionally breached that duty by willfully plotting to transfer him out of retalliation, Lied to him to cover it up to prevent him from grieving it, and lied to her employer when requesting a transfer.

85. her actions or omissions, as stated in 1-84, proximately caused harm upon the Plaintiff

## Conclusion & Prayer for Relief

Plaintiff seeks 1 cents in compensatory damages. He seeks a preliminary injunction and TRO to enjoin the Illinois Dept. of corrections and the Warden of Dixon To;

(a) Refrain, at least temporarily, in an amount of time deemed sufficient by the Honorable court, from transferring Firas Ayoubi, until a evidentiary hearing can be held on the Merits — Because of Threshold showing of the likihood of irreparable harm,

(b) any other relief The Honorable court deems fair Just and equitable.

Respectfully Submitted

3-24-23          By: S/ [signature]

Rule 11 Certification:                    Firas Ayoubi
I Firas Ayoubi Declare under Rule 11 FRCP,   #R66956
and Penalty of Perjury (28 USC 1746) that   Dixon C.C. (xhouseB)
The foregoing is true and correct well grounded   2600 N Brinton
in Law, and fact, and Supported by evidence.   Dixon, IL, 61021
I understand if court finds otherwise it
will be subject to Dismissal as a Sanction.